JAMES A. OSBORNE vs. COMMONWEALTH.

Suffolk. February 8, 1979. — May 15, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Assistance of counsel, Psychiatric examination, Argument of counsel, Sentence. *Insanity. Constitutional Law,* Assistance of counsel.

There was no merit to a defendant's contention that his plea of guilty to murder in the second degree was involuntary because he was not informed that malice was an element of the crime where the defendant admitted facts constituting murder in the first degree. [107-108]

The record of a criminal case did not support the defendant's contention that he was denied effective assistance of counsel because trial counsel failed to investigate the possibility of an insanity defense before advising the defendant to plead guilty. [108-113]

A defendant who entered pleas of guilty to murder in the second degree, assault with intent to commit rape, and armed robbery upon which two consecutive life sentences and a further consecutive sentence of fifteen to twenty-five years were imposed was denied effective assistance of counsel at the sentencing stage where counsel's argument was so inadequate and so misdirected that it could not be treated as a trial tactic or a matter of reasonable judgment. [113-115]

PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on June 5, 1972, and October 29, 1976, respectively.

The cases were reported by *Kaplan, J.*

*J. Russell Hodgdon* for the plaintiff.

*Robert J. McKenna, Jr.,* Assistant District Attorney (*Kevin Connelly* with him) for the Commonwealth.

WILKINS, J. In 1969, after two days of trial, the petitioner (the defendant)[1] pleaded guilty to murder in the second

---

[1] For purposes of convenience, we refer to the petitioner as "the defendant" throughout the opinion.

degree, assault with intent to commit rape, and armed robbery. He was sentenced to consecutive terms of life imprisonment on the indictments for murder and for assault with intent to commit rape, and to fifteen to twenty-five years on the indictment for armed robbery, to be served from and after the two consecutive life sentences. The defendant's appeals of his sentences to the Appellate Division of the Superior Court were dismissed, and in 1971 a motion for a new trial was denied. In 1972, the defendant filed a petition for a writ of error in the Supreme Judicial Court for the county of Suffolk. A special master held a hearing on the petition and filed a report recommending denial of the writ, but no action was taken on the report. In 1976, the defendant filed a second petition for a writ of error in the county court. The two proceedings were consolidated and were referred to another special master, who held another hearing (the 1977 hearing) and filed a report. A single justice reserved and reported the issues raised by that report.

The defendant challenges the voluntariness of his plea of guilty to murder in the second degree[2] on the grounds that (1) he was not informed of the elements of the crime as required by *Henderson* v. *Morgan*, 426 U.S. 637 (1976), and (2) defense counsel's failure to investigate an insanity defense and to inform him that such a defense was available constituted ineffective assistance of counsel.[3] He also argues that defense counsel's outrageous argument on disposition deprived him of the effective assistance of counsel. We find no merit in the defendant's challenge to the voluntariness of his plea, but we agree

---

[2] The defendant does not challenge the voluntariness of the pleas of guilty to armed robbery and to assault with intent to commit rape, although his argument concerning the availability of an insanity defense would appear to apply to all three guilty pleas.

[3] The defendant has not argued that his guilty plea was coerced, nor is there anything in the record to support such a contention.

that defense counsel's argument on disposition deprived the defendant of the effective assistance of counsel in the sentencing stage of his case. We therefore allow his convictions to stand but vacate his sentences (except the statutorily mandated life sentence for murder in the second degree) and remand the cases to the Superior Court for resentencing.

On February 24, 1969, the defendant beat to death a fifty-six year old woman who operated a small grocery store in East Boston. The victim had been struck in the head repeatedly with a soda bottle, most of her clothing had been torn off, and a portion of her brassiere had been used as a gag in her mouth. An eyewitness saw the defendant leaving the store and summoned the police, who were cruising in the area. They apprehended the defendant hiding under a car. The defendant's hand was badly cut, and the cuffs of his trousers contained particles of glass. Hairs and blood of the victim were on the defendant's person and clothing. The police found approximately $140 in his pocket, slightly more than the amount of money estimated by the victim's husband to have been in the cash register that night. The defendant was indicted for murder in the first degree, assault with intent to commit rape, and armed robbery.

Although it did not come out during the two days of trial, there was evidence before the second special master that the defendant had been drinking heavily on the day of the crimes and that he was an alcoholic at that time. The defendant now claims to have no memory of the incident.

The first attorney appointed to represent the defendant could not try the case because he had not yet been a member of the bar for ten years. Rule 95 of the Superior Court (1954), superseded by Rule 53 of the Superior Court (1974), as amended (1978). See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 & n.7 (1977). When the attorney who took over the case (second attorney) became ill shortly before trial, a third attorney (trial counsel) was ap-

pointed to represent the defendant, and it is primarily his conduct of which the defendant complains. The second attorney remained as co-counsel but did not participate actively in the trial.

1. The defendant argues that his plea of guilty to murder in the second degree was involuntary under *Henderson* v. *Morgan*, 426 U.S. 637 (1976), because he was not informed that malice was an element of the crime. The guilty plea the defendant now challenges was made seven years before the *Henderson* decision. We need not decide whether the principles of the *Henderson* case apply retroactively because, even if they do, the defendant's plea was voluntary under those principles. See *Commonwealth* v. *Soffen*, 377 Mass. 433, 441 (1979); *Commonwealth* v. *McGuirk*, 376 Mass. 338, 341 (1978).

The circumstances under which the defendant pleaded guilty in this case were substantially different from those in the *Henderson* case. There the defendant, a man of below-average intelligence, was not informed that, under New York law, intent to kill was a necessary element of murder in the second degree. He made no statement implying the requisite intent, nor did he hear the prosecution's case against him. The trial judge found as a fact that the element of intent to kill was not explained to the defendant. *Henderson*, *supra* at 647. Thus, the defendant's plea was involuntary because he did not receive "real notice of the true nature of the charge against him." *Id.* at 645, quoting from *Smith* v. *O'Grady*, 312 U.S. 329, 334 (1941).

The defendant in this case was of normal or above-average intelligence. He sat through two days of trial during which he heard most of the prosecution's case against him. At the plea hearing, the clerk asked the defendant how he pleaded to the indictment that charged "that you did assault and beat [the victim] with intent to murder her and by such assault and beating did kill and murder [her]." The defendant replied, "I plead guilty to so much of the indictment as calls for second degree mur-

der." He also pleaded guilty to the other charges. The judge asked him if he in fact committed the acts alleged in the three indictments, to which he replied, "I vaguely remember it. It's coming back to my memory now." The judge then asked the defendant whether he understood that by pleading guilty he was admitting all the necessary elements of the crimes, and he answered affirmatively. The defendant also told the judge that trial counsel and co-counsel had discussed the plea fully with him. The judge found the defendant was "clearly aware of the charges against him." At the 1977 hearing before the special master, the defendant testified that he did not recall whether his first attorney had explained the charges to him but that he understood what he was on trial for.

The requirements of the *Henderson* case are satisfied if the defendant admits facts constituting the unexplained element. *Henderson, supra* at 646. *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978). In addition to murder, the defendant pleaded guilty to armed robbery and to assault with intent to commit rape. Murder committed in the course of either of these felonies is, by statute, murder in the first degree. G. L. c. 265, §§ 2, 17, 24. Malice aforethought is conclusively established by the commission of the felonies. *Commonwealth* v. *Watkins*, 375 Mass. 472, 486-487 (1978). *Commonwealth* v. *Balliro*, 349 Mass. 505, 512 (1965). The defendant thus admitted facts constituting murder in the first degree. We are not inclined to vacate his plea simply because he was allowed to plead guilty to a lesser crime than the one he admitted having committed. The defendant's plea meets the standard of the *Henderson* case because the defendant admitted facts constituting, at the very least, the crime to which he pleaded guilty.

2. The defendant contends that he was denied effective assistance of counsel because trial counsel failed to investigate the possibility of an insanity defense and to inform him of the availability of that defense. As we stated in

*Commonwealth* v. *Adams*, 374 Mass. 722 (1978), the test of counsel's conduct is whether it was "within the range of competence demanded of attorneys in criminal cases." *Id.* at 728, quoting from *McMann* v. *Richardson*, 397 U.S. 759, 771 (1970). See also *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (whether counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer").

Trial counsel's alleged failure to inform the defendant of the availability of an insanity defense is immaterial. The defendant testified at the 1977 hearing that his first attorney had discussed with him the possibility of a "temporary insanity plea." Before accepting the guilty plea, the judge asked the defendant whether he had ever been treated for a mental condition and whether he had any mental illness of which he was aware. The defendant answered "No" to both questions. The defendant was aware of the existence of the defense of insanity and its possible applicability to his case.

There remains the issue whether trial counsel's conduct in not investigating an insanity defense was within the range of competence demanded of attorneys in criminal cases. The issue is whether counsel should have investigated an insanity defense before advising the defendant to plead guilty, and not counsel's failure to present an insanity defense at trial.[4]

---

[4] The defendant cites several cases in which Federal courts have found that failure to investigate an insanity defense deprived the defendant of the effective assistance of counsel. Although some of the "evidence" of insanity in some of those cases is similar to the "evidence" in this case (see *Springer* v. *Collins*, 444 F. Supp. 1049 [D. Md. 1977] [bench trial]; *Wood* v. *Zahradnick*, 430 F. Supp. 107 [E.D. Va. 1977], aff'd and remanded, 578 F.2d 980 [4th Cir. 1978]), those cases all involve a failure to investigate an insanity defense *for trial* (see *United States* v. *Fessel*, 531 F.2d 1275 [5th Cir. 1976]; *United States* v. *Edwards*, 488 F.2d 1154 [5th Cir. 1974]; *Brubaker* v. *Dickson*, 310 F.2d 30 [9th Cir. 1962], cert. denied, 372 U.S. 978 [1963]; *United States ex rel. Lee* v. *Rowe*, 446 F. Supp. 1039 [N.D. Ill. 1978]). The defendants in those cases were facing the risk inherent in a criminal trial, and the issue was whether an insanity defense should have been presented at trial.

In order to seek to obtain a verdict of not guilty by reason of insanity, the defendant would have had to give up the opportunity to plead guilty to murder in the second degree and instead run the risk of the imposition of a mandatory sentence of death.[5] Of course, a guilty plea might have been ill-advised if a viable insanity defense had been available. However, failure to pursue a groundless insanity defense is not ineffective assistance of counsel (*Commonwealth* v. *Bernier*, 359 Mass. 13, 20-21 [1971]), and failure to pursue a marginal insanity defense before advising a guilty plea may not amount to ineffective assistance of counsel (e.g., *People* v. *Stanworth*, 11 Cal. 3d 588, 609-614 [1974]; *Parks* v. *State*, 518 S.W.2d 181, 184-185 [Mo. App. 1974]), especially where the defendant has sufficient reasons to plead guilty, such as the strength of the evidence against him, fear of the death penalty, or a desire for a clear conscience (see, e.g., *Long* v. *Brewer*, 253 N.W. 2d 549, 559 [Iowa 1977]). Even where, arguably, there may have been an insanity defense, some courts have held that advice to plead guilty did not render counsel's assistance ineffective. See *Allen* v. *VanCantfort*, 436 F.2d 625, 630 (1st Cir.), cert. denied, 402 U.S. 1008 (1971) (overwhelming evidence of guilt; chance of favorable report from psychiatrist remote); *United States* v. *Cassidy*, 428 F.2d 383, 384 (9th Cir.), cert. denied, 400 U.S. 966 (1970) (strong evidence of guilt); *In re Hawley*, 67 Cal. 2d 824 (1967) (life imprisonment instead of death penalty; other charge dropped).

---

[5] At the time of the defendant's trial in 1969, the jury could not recommend that the death penalty be not imposed for murder in the first degree committed "in connection with the commission of rape or an attempt to commit rape." G. L. c. 265, § 2. The discretionary imposition of the death penalty was not declared unconstitutional until 1972 (*Furman* v. *Georgia*, 408 U.S. 238), and the mandatory imposition of the death penalty under G. L. c. 265, § 2, was not found to be a violation of the Massachusetts Declaration of Rights until 1975 (*Commonwealth* v. *O'Neal*, 369 Mass. 242).

Failure to investigate an insanity defense would have fallen below the level of competence demanded of attorneys in criminal cases if facts known to, or with minimal diligence accessible to, trial counsel raised a reasonable doubt as to the defendant's mental condition. See, e.g., *United States* v. *Edwards*, 488 F.2d 1154, 1164 (5th Cir. 1974); *Wood* v. *Zahradnick*, 430 F. Supp. 107, 111 (E.D. Va. 1977), aff'd and remanded, 578 F.2d 980 (4th Cir. 1978). That was not the case here.

Most of the "evidence" of insanity offered by the defendant is evidence not of lack of criminal responsibility but of alcoholism.[6] Alcoholism is not a mental disease or defect under *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967). Cf. *Commonwealth* v. *Sheehan*, 376 Mass. 765, 767 (1978) (drug addiction is not a mental disease or defect). Although the very circumstances of a crime may be evidence of lack of criminal responsibility (see *Commonwealth* v. *Laliberty*, 373 Mass. 238, 245 [1977]; *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 765 [1977]), a senseless crime alone does not entitle the defendant to a jury instruction on criminal responsibility (see *Commonwealth* v. *Mattson*, 377 Mass. 638, 644 [1979]).

The record does not show that trial counsel unreasonably ignored a plausible insanity defense. At most, it shows that he disagreed with the first attorney over the relative advantages of pleading guilty and pleading not guilty by reason of insanity. The second attorney thought that an

---

[6] The defendant's brief lists a number of factors that he claims should have alerted trial counsel to the necessity of exploring an insanity defense and would have supported such a defense. The defendant was an alcoholic who had been drinking heavily the day of the murder. Dressed only in light clothing, he went out during a blizzard and committed a crime he cannot remember against a woman he did not know. He was found hiding under a car, and his first words to the police were, "How did I get out of bed?" He had suffered blackouts previously. He had been in Viet Nam (but had not seen combat). The crime itself was senseless. The hearing before the second special master also brought out that the defendant had been in trouble in the military and sometimes became violent while drunk.

insanity defense should be explored but doubted whether there was enough evidence to get an instruction at trial and thought that an insanity plea was risky.

None of the psychiatrists who examined the defendant in 1969 or since concluded that he suffered from a mental disease or defect at the time of the crimes.[7] Although expert psychiatric testimony is not necessary to raise the issue of insanity (see *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 765-766 [1977]), the chances of obtaining expert testimony have a bearing on counsel's decision whether to assert an insanity defense.

The second special master was warranted in finding, and, as a matter of law, we agree that the decision to plead guilty rather than proceed with a trial and risk the imposition of the death penalty was a reasonable, tactical decision on the part of trial counsel. See, e.g., *Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 (1978); *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The evidence of the defendant's guilt was overwhelming. The

---

[7] Prior to trial, the defendant was sent to Bridgewater State Hospital for observation and a determination of his competency to stand trial. He was diagnosed as a chronic alcoholic but not psychotic and was found competent to stand trial. After trial counsel was appointed, the defendant was examined by a court clinic psychiatrist at the request of the district attorney and "Defense Attorney," presumably trial counsel. The purpose of the first examination and, quite possibly, of the second as well was to determine the defendant's competency to stand trial, not to determine his criminal responsibility at the time of the crimes. Nevertheless, the reports of those examinations bear on the question of what trial counsel knew or should have known about the defendant's mental condition.

The psychiatrist's report stated that the defendant was of normal intelligence and clearly aware of the charges against him; that he claimed to have suffered several alcoholic blackouts, during which he often became violent; that the blackout on the night of the crimes could have been due to alcohol or to a conscious or unconscious attempt to push the memory of the brutal event from his mind. The psychiatrist did not conclude that the defendant suffered from any mental disease or defect. Finally, when asked by the special master at the 1977 hearing whether he then thought that he had been insane in 1969, the defendant answered, "No."

defendant has failed to show that the facts known to trial counsel or reasonably ascertainable with minimal investigation would have entitled him to an insanity instruction at trial.

3. We agree that the defendant was denied effective assistance of counsel in the sentencing phase of his case. Counsel's argument was so inadequate and so misdirected that it cannot be treated as a trial tactic, a matter of reasonable judgment.

Counsel began his argument by stating that "a certain feeling . . . kind of creeps over you when you're defending this type of a case." He opined that the victim, "this kind, pious, lovely lady that was so horribly mutilated, assaulted and beaten, was in that store that night . . . [not] because of the love of money or the lust of worldly goods" but rather, "that night in the howling winds and snowdrifts, . . . she was in that store probably more than likely to help some neighbour who might have wanted a bottle of milk or something for her family." In came the defendant, "this phantom of the night," "saturated with liquor," "transformed into the character of a Jekyll and Hyde." Counsel prayed for the victim: "I wish on that little mass of molded clay, that body of that lovely lady, I wish that God would keep her heavenly and may prayers be said in her memory."

Counsel failed even to ask for concurrent, rather than consecutive, sentences. The only possibly mitigating factor he brought to the judge's attention was the defendant's alcohol problem. He did not mention the possibility of rehabilitation, the defendant's military record, his service in Viet Nam, his lack of a prior criminal record, the fact that the authorities at the jail had considered him trustworthy enough to take on certain responsibilities, or the fact that, while in jail awaiting trial, he apparently attempted to save the life of a fellow prisoner who committed suicide. Contrast *Commonwealth* v. *LeBlanc*, 364 Mass. 1 (1973).

The defendant is not obliged to prove a causal relationship between counsel's "argument" and the sentences imposed and thus directly demonstrate prejudice. To impose such a burden is not reasonable. It rarely could be met. In *Holloway* v. *Arkansas*, 435 U.S. 475 (1978), the Supreme Court did not require a showing of prejudice resulting from counsel's conflict of interest because such a rule "would not be susceptible of intelligent, evenhanded application" and "would require, unlike [in] most cases, unguided speculation." *Id.* at 490, 491. See also *Commonwealth* v. *Davis*, 376 Mass. 777, 781 (1978); *Commonwealth* v. *Leslie*, 376 Mass. 647, 651 (1978). The Supreme Court distinguished cases in which counsel commits an error of identifiable scope at trial, and the degree of prejudice, if any, is readily apparent. Cf. *Commonwealth* v. *Adams*, 374 Mass. 722, 729 (1978) (violation of attorney's duty, to amount to ineffective assistance of counsel, must be both substantial and prejudicial). If we were to assume, as the Commonwealth suggests, that the judge disregarded trial counsel's argument and took adequate notice of every mitigating factor in the probation report,[8] we would be deciding substantially that there never could be a constitutionally deficient argument of counsel on disposition. But there is a right to counsel at the sentencing stage. *McConnell* v. *Rhay*, 393 U.S. 2 (1968). "[T]he necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." *Mempa* v. *Rhay*, 389 U.S. 128, 135 (1967). Cf. Mass. R. Crim. P. 28 (b), effective July 1, 1979 ("Before imposing sentence the court shall afford the defendant or his counsel an opportunity to speak on behalf of the defendant and to present any information in mitigation of punishment"). Conse-

---

[8] There is nothing in the record to indicate that the judge was aware of the defendant's attempt to save a fellow inmate's life or of his position of limited responsibility and trust while in jail awaiting trial.

quently, the defendant should be resentenced on the convictions of armed robbery and assault with intent to commit rape, as to which the sentences to be imposed were not mandatory.[9]

The sentencing judge, in his discretion, may take into account any subsequent good behavior of the defendant. See *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970) (sentencing judge may consider hearsay, the defendant's behavior, family life, employment, and various other factors); *United States* v. *Tucker*, 404 U.S. 443, 446 (1972) (scope of sentencing judge's inquiry is "largely unlimited either as to the kind of information he may consider, or the source from which it may come"); *Williams* v. *New York*, 337 U.S. 241, 245 (1949) (sentencing judge may consider any factors that throw light on the defendant's "life, health, habits, conduct, and mental and moral propensities"). Cf. Mass. R. Crim. P. 28 (d) (2), effective July 1, 1979 ("the [presentence investigation] report shall include such other available information as may be helpful to the court in the disposition of the case").[10]

---

[9] The sentence of life imprisonment for murder in the second degree was mandatory (G. L. c. 265, § 2), and, consequently, the nature of trial counsel's argument on disposition could have had no effect on the sentence received. However, the sentences for armed robbery and for assault with intent to commit rape could have been for life or for any term of years. G. L. c. 265, §§ 17, 24. The defendant received the maximum sentence on the charge of assault with intent to commit rape and, on the armed robbery charge, a sentence of fifteen to twenty-five years. Most significantly for the defendant, the second and third sentences were consecutive.

[10] It is also permissible for a sentencing judge to take into account a defendant's misconduct subsequent to the crime or crimes for which he is being sentenced (see *Commonwealth* v. *Franks*, 372 Mass. 866 [1977]; *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 220-221, 225 n.8 [1976]), provided the judge does not punish the defendant either for exercising his right to appeal (*North Carolina* v. *Pearce*, 395 U.S. 711 [1969]) or for a different crime from that for which he is to be sentenced (*Commonwealth* v. *Sitko*, 372 Mass. 305, 313 [1977]; *McHoul* v. *Commonwealth*, 365 Mass. 465 [1974]).

4. The reports of the special masters are confirmed in so far as they contain findings of fact. All three convictions and the mandatory life sentence imposed on the murder indictment (No. 41166) shall stand. The sentences imposed on indictment No. 41167, for armed robbery, and on indictment No. 41168, for assault with intent to commit rape, are vacated, and there shall be further sentencing proceedings in the Superior Court.

*So ordered.*