JEFFREY T. MILTON vs. COMMISSIONER OF CORRECTION.

No. 04-P-1766.

Suffolk. February 14, 2006. - August 31, 2006.

Present: DUFFLY, BROWN, & KATZMANN, JJ.

*Practice, Criminal,* Sentence.

A prisoner who had completed a sentence following a guilty plea that was later withdrawn, and regarding which the Commonwealth subsequently filed a nolle prosequi, was not entitled to receive credit for time served on that sentence toward a sentence on an unrelated offense [255-257]; however, he should have received credit for time served on a second invalid conviction, where the prisoner was still serving the sentence on the second conviction when he was convicted of the unrelated offense and could not have anticipated (at the time he committed the unrelated offense) that his second conviction subsequently would be reversed [257-259].

A prisoner who was serving a sentence on a conviction that was subsequently vacated was not entitled to statutory good time against an unrelated offense that was committed during his term of imprisonment, because the confinement was lawful until the conviction was vacated. [259-260]

CIVIL ACTION commenced in the Superior Court Department on May 23, 2002.

The case was heard by *Thomas E. Connolly*, J., on motions for summary judgment.

*Maxine Sushelsky* for the plaintiff.

*David Slade* for the defendant.

DUFFLY, J. In 1990, while an inmate at Massachusetts Correctional Institution (MCI), Cedar Junction, and serving time on an unrelated conviction, the plaintiff, Jeffrey T. Milton, was arraigned on two counts of assault and battery by means of a dangerous weapon, convicted in Superior Court in Norfolk County, and sentenced to a term of eight to ten years on each of the two convictions (Norfolk sentence), to be served concurrently, from and after. Milton filed the underlying action against

the Commissioner of Correction (commissioner) seeking to reduce the Norfolk sentence by a credit for all jail time (1,100 days) he served in connection with two separate and unrelated convictions, both of which were vacated, arising in the Superior Court in Middlesex County. Milton also sought statutory good time in connection with the Norfolk sentence, denied him on the basis of his having committed the crimes during a term of imprisonment.

On cross motions for summary judgment, a judge of the Superior Court determined that Milton was entitled to credit only as of April 12, 1990, the date of the Norfolk County offenses (a credit of 237 days), and denied the motion as to Milton's request for statutory good time. Milton appealed.

*Background.* As in most sentencing cases, a detailed chronology may be helpful to our later discussion of Milton's claims. We begin with a description of the two separate and unrelated Middlesex County convictions for which Milton seeks credit.

On July 30, 1987, Milton pleaded guilty to a charge of assault and battery by means of a dangerous weapon and was sentenced to one year in the house of correction, with thirty days to serve, the balance suspended (Middlesex I sentence). On October 21, 1987, the suspended portion of the Middlesex I sentence was revoked and the balance of the sentence was imposed. Milton claims (and the Commonwealth does not dispute) that he was released from the Middlesex I sentence on June 21, 1988; with adjustments for statutory good time, he served 218 days.

Milton was arraigned on June 22, 1988, on another charge of assault and battery by means of a dangerous weapon, to which he pleaded guilty on August 15, 1988. He was sentenced to four and one-half to ten years at MCI, Cedar Junction, with fifty-five days' credit (Middlesex II sentence).

On April 12, 1990 — before completing his Middlesex II sentence, but after he had been released from his Middlesex I sentence — while confined at MCI, Cedar Junction,[1] Milton committed two more offenses of assault and battery by means

[1]Milton was transferred in May, 1991, to a Federal prison in Lewisburg, Pennsylvania, where, on October 10, 1994, he completed his Middlesex II sentence.

of a dangerous weapon. He was convicted of both counts on December 5, 1990, and sentenced to eight to ten years on each conviction, to be served concurrently (Norfolk sentence), from and after the Middlesex II sentence.

Milton completed the Middlesex II sentence on October 10, 1994.[2] On July 6, 2000, this court vacated the Middlesex II sentence and ordered a new trial, concluding that Milton's plea counsel provided ineffective assistance by failing to investigate the issue of the defendant's criminal responsibility. *Commonwealth* v. *Milton,* 49 Mass. App. Ct. 552, 560-562 (2000). The indictment against Milton subsequently was dismissed. In addition, on November 22, 2002, a Superior Court judge allowed Milton's motion to withdraw his guilty plea in the Middlesex I case, and the Commonwealth subsequently filed a nolle prosequi.

By the present action, Milton seeks credit for as yet uncredited time served on the Middlesex I and Middlesex II sentences and statutory good time on the Norfolk sentence. On cross motions for summary judgment, a Superior Court judge, purporting to rely on *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 397 n.11 (1977) (*Manning*), on the sentencing credit issue, partially allowed Milton's motion by increasing Milton's credit (using as a starting date the date on which the Norfolk offenses were committed, April 12, 1990, rather than the later date employed by the commissioner, the December 5, 1990, date of conviction), and otherwise allowed the commissioner's motion.[3] Milton claims in this appeal that he is entitled to credit for all time served on the Middlesex I sentence (218 days), as well as the remaining time (651 days) served on the Middlesex II sentence.

*Discussion.* 1. *Credit for time served on vacated sentences.*

---

[2]The commissioner has made no argument that the case is moot, although it may be assumed that Milton has, by now, completed his Norfolk sentence. The parties agree that Milton currently is serving a Federal sentence imposed to run consecutively from the Norfolk sentence; at oral argument, Milton claimed that any credit applied to his Norfolk sentence will reduce the time remaining on his Federal sentence.

[3]Although the judge's decision states that the commissioner's motion is denied, the judgment expressly states that the commissioner's motion is allowed in substantial part.

We agree that our disposition of Milton's claim depends in large measure on whether the facts of this case are governed by the general principles articulated in *Manning*, 372 Mass. 387, the thrust of which is to prevent "dead time."[4] As the court made clear in that case:

> "The problem is not when a sentence is imposed but rather what to do to or for a prisoner who has served time under a sentence that is reversed. The jail time credit statutes indicate legislative policy that credit be granted. Familiar equitable principles require an interpretation that does not leave a prisoner having served bad or dead time for which no credit is given. A prisoner who had proceedings free from error would have time served credited to a sentence. A prisoner should not be penalized or burdened by denial of a credit simply because he had successfully appealed a criminal conviction. . . . The result we reach neutralizes the effect of the erroneous . . . sentences on the valid . . . sentence, and causes the plaintiff to serve no more and no less than he should pursuant to the [valid] sentence."

*Id.* at 396-397. See *Commonwealth* v. *Milton*, 427 Mass. 18, 24-25 (1998); *Gardner* v. *Commissioner of Correction*, 56 Mass. App. Ct. 31, 34-37 (2002).

Mitigating against this general principle, however, is the "possibility that the defendant is banking time or getting double credit." *Commonwealth* v. *Maldonado*, 64 Mass. App. Ct. 250, 251-252 (2005). "[I]t is not our intention to grant prisoners license to commit future criminal acts with immunity." *Manning, supra* at 395.

Our decisions have described circumstances in which a defendant has been allowed to credit time in an unrelated case in order to prevent him from serving dead time, while noting that "the statutes do not permit defendants to 'bank time' against future offenses." *Commonwealth* v. *Milton*, 427 Mass. at 24. Thus, as the court noted in *Milton*, "it was important to the

[4]"[T]he term 'dead time' [is used] to refer to time spent in confinement under an invalid sentence for which no day-to-day credit is given against any sentence." *Lynch, petitioner*, 379 Mass. 757, 759 n.1 (1980). See *Manning, supra* at 390.

holding [in *Manning*] that the defendant was convicted of the second crime prior to being discharged on the first." *Ibid.* See *Commonwealth* v. *Harvey*, 66 Mass. App. Ct. 297, 302 (2006). On this basis, the court in *Milton* declined to apply a credit for approximately fifteen months of dead time that the defendant served awaiting trial (the defendant not having posted bail) on a robbery charge that was nolle prossed; credit was denied because the defendant had been discharged approximately six months prior to being convicted on the second crime. "Although the time he served awaiting trial on the robbery charge constitutes 'dead time,' the need to prevent criminal defendants from 'banking time' for use against future sentences outweighs any fairness issues normally applicable in such situations." *Commonwealth* v. *Milton, supra* at 25.

Here, Milton had completed the Middlesex I sentence on June 21, 1988; the Norfolk offenses were committed after this date, on April 12, 1990. Thus, based on the foregoing line of cases, it was correct to deny credit for time served on the Middlesex I sentence.[5]

However, based on the general principles of fairness enunci-

---

[5]In support of each of his various claims for relief, Milton alludes to State and Federal constitutional principles. Although he references the United States Constitution and the Massachusetts Declaration of Rights, the cases he cites articulate only general principles relating to due process, equal protection, and vagueness. What Milton fails to provide is any reasoned analysis to support his claims on constitutional grounds. See *Commonwealth* v. *Springer*, 49 Mass. App. Ct. 469, 477 (2000) (defendant's claim, presented in a conclusory manner without any articulated reasoning, rejected as not conforming with Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]); *Oakham Sand & Gravel Corp.* v. *Oakham*, 54 Mass. App. Ct. 80, 86 (2002) (same). Moreover, Milton's brief lacks citation to any persuasive or relevant authority that might reveal how his claims are supported by invocation of constitutional principles. See *Commonwealth* v. *Lepper*, 60 Mass. App. Ct. 36, 50-51 (2003) ("We address . . . only those claims supported in the defendant's brief by citation to relevant authority"). See also *Matter of Dasent*, 446 Mass. 1010, 1013 n.5 (2006). He also has disregarded our admonition that, when briefing constitutional questions, Federal and State issues should be separated into distinct grounds and substantive analysis or argument on each separate ground should be provided. See *Lee* v. *Commissioner of Rev.*, 395 Mass. 527, 534 n.10 (1985); *Commonwealth* v. *Pike*, 428 Mass. 393, 402 n.5 (1998).

Appellate consideration of constitutionally based claims requires more than Milton has provided. Accordingly, we will not consider his assertions of constitutional violation, as they are deemed waived.

ated in these same cases, Milton should have received credit against his Norfolk sentence for all of the time he served on his Middlesex II sentence.[6] We are not persuaded by the commissioner's argument that *Manning* is inapposite because "Manning did not seek credit for the time he was held on his [invalid] charge prior to his arrest on the [valid] charge."[7] We think more significant is the fact that the court in *Manning* rejected the superintendent's arguments in that case as overly legalistic, in that he sought to adhere "to the letter of the [holding in] *Brown* [v. *Commissioner of Correction*, 336 Mass. 718 (1958)]." *Manning*, 372 Mass. at 393-394. Our courts have "adopted a rule that would remedy the injustice of a prisoner serving time for which he receives no credit. Liberty is of immeasurable value; it will not do to read statutes and opinions blind to the possible injustice of denying credit." *Id.* at 394.[8] Here, Milton was still serving his Middlesex II sentence when he was convicted of the Norfolk offenses, and could not have anticipated (at the time he

---

[6]Although, as Milton observes, the court in *Manning, supra* at 397 & n.11, referred to the American Bar Association Standards Relating to Sentencing Alternatives and Procedures (1968), Standard § 3.6(c), as an analogous rule of sentence credit (providing for credit "for *all time served since the commission of the offenses* on which the [erroneous] sentences were based" [emphasis supplied]), it also made reference to the National Advisory Commission on Criminal Standards and Goals (1973), Standard § 5.8(2), which provides that "[w]here an offender is serving multiple sentences, either concurrent or consecutive, and he successfully invalidates one of the sentences, *time spent in custody* should be credited against the remaining sentence" (emphasis supplied), *id.* at 397 n.10.

[7]The opinion also does not state that Manning had been arrested and was being held on the invalid charge prior to his arrest on the valid charge. See *Manning, supra* at 389 n.3 (describing periods of jail time as commencing with Manning's arrest on the valid charge).

[8]The commissioner's reliance on *Brown* v. *Commissioner of Correction, supra*, to support affirmance of the judge's ruling, is also misplaced. "The relief sought in *Brown* was limited to credit from the imposition of the [valid] sentences and that relief was sufficient. The plaintiff in *Brown* was entitled to immediate release based on that date, so the additional question of credit for time served before the imposition of sentence was not presented." *Manning, supra* at 393. See *Gardner* v. *Commissioner of Correction*, 56 Mass. App. Ct. at 34-35. Indeed, the *Manning* court observed, in a footnote to its discussion regarding the *Brown* case, "One commentator suggested at the time that *Brown* be extended to 'award credit for time served from the *commencement* of a prior erroneous conviction.' " *Manning, supra* at 393 n.6, quoting from Note, 38 B.U. L. Rev. 623, 625 (1958).

committed the Norfolk offenses) that his conviction subsequently would be reversed. On this basis, we conclude that Milton is entitled to credit from the commencement of his sentence on the erroneous Middlesex II conviction.

2. *Statutory good time.* The commissioner, relying on G. L. c. 127, § 129[9] (repealed as to all offenses committed on or after July 1, 1994, by St. 1993, c. 432, §§ 10, 21), denied Milton statutory good time against his Norfolk sentence because the Norfolk offenses had been committed "during a term of imprisonment." Milton argues that because the term of imprisonment was based on a conviction that subsequently was vacated, it should not figure into the calculation of the length of his prison term. His reliance on cases barring States from enforcing punishment stemming from an invalid conviction, or enhancing punishment for another offense, is misplaced.[10]

"[A]t least one of the legislative purposes behind § 129 is the encouragement of orderly conduct by prison inmates." *Amado* v. *Superintendent, Mass. Correctional Inst. at Walpole*, 366 Mass. 45, 48 (1974). It is undisputed that Milton committed the offenses that underlie the Norfolk sentence while incarcerated at MCI, Cedar Junction, on the Middlesex II sentence. "Courts normally shrink from construing laws in a manner that would reward wrongdoing. The reason is that, in common experience, a legislature does not intend to reward wrongdoing . . . ." *Rachal, petitioner*, 25 Mass. App. Ct. 126, 130 (1987).

---

[9]Section 129 — since repealed, but in effect as to sentences imposed while § 129 was in force, see *DuPont* v. *Commissioner of Correction*, 59 Mass. App. Ct. 908, 909 n.2 (2003), cert. denied, 542 U.S. 943 (2004) — provided in relevant part, see St. 1963, c. 535:

> "If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions hereunder from the new sentence or sentences of imprisonment."

[10]Milton relies for this argument on *Burgett* v. *Texas*, 389 U.S. 109 (1967); *Oses* v. *United States*, 833 F. Supp. 49 (D. Mass. 1993); and *Mateo* v. *United States*, 276 F. Supp. 2d 186 (D. Mass. 2003), none of which involves sentencing credit. As to his constitutionally based claims, see note 5, *supra*.

On the basis of our reasoning in *DuPont* v. *Commissioner of Correction*, 59 Mass. App. Ct. 908, 910 (2003), cert. denied, 542 U.S. 943 (2004), we reject Milton's substantially similar argument "that as the original [Middlesex II] sentences were the result of a flawed trial, his confinement . . . was unlawful . . . and, therefore, he is entitled to good time credits against the sentence for the [Norfolk] offenses." "[W]hen a person is confined in accordance with a duly imposed sentence, that confinement is lawful until the conviction or the sentencing process that led to it is reversed through the legal process." *Id.* at 910-911, citing *Lynch, petitioner*, 379 Mass. 757, 760 (1980).[11] The Superior Court judge properly upheld the commissioner's denial of good time Milton otherwise might have accumulated against the Norfolk sentence because the Norfolk offenses were committed while he was incarcerated.

*Conclusion.* We reverse so much of the judgment pertaining to credit for the Middlesex II sentence and remand for further proceedings consistent with this opinion. The remainder of the judgment is affirmed.

*So ordered.*

---

[11]The facts of this case are unlike those of *Lynch.* As we said in *DuPont* v. *Commission of Correction, supra* at 910, "The *Lynch* case concerned a prisoner whose parole had been unconstitutionally revoked by the Parole Board. . . . The Department of Correction could not, as it sought to do, deprive the defendant in that case of good time credits because he should not have been confined in the first place." In addition, "the decisive factor in the *Lynch* case was that 'the petitioner was held for approximately thirteen months in violation of his constitutional rights while he was serving no other sentence.' [*Lynch, petitioner, supra* at 761.] Good time was allowed as a compensation for that otherwise irreparable wrong. No similar wrong occurred in this case . . . ." *Rachal, petitioner, supra* at 131.