# United States Court of Appeals
## For the First Circuit

No. 00-2325

UNITED STATES OF AMERICA,

Appellee,

v.

FELIX MATEO, A/K/A JOHNNY RODRIGUES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

James Patrick Bardsley on brief for appellant.
James B. Farmer, United States Attorney, and Michael J. Pelgro, Assistant United States Attorney, on brief for appellee.

November 9, 2001

**SELYA, Circuit Judge.** Relying primarily upon developments that occurred after he had filed his notice of appeal, defendant-appellant Felix Mateo invites us to vacate the 121-month incarcerative sentence that the district court imposed for his admitted involvement in drug-trafficking activities. Finding the new matter irrelevant and discerning no error in the court's sentencing determinations, we decline the invitation.

Our standard of review in this sentencing appeal is familiar: we scrutinize the district court's legal determinations (including its application of the sentencing guidelines) de novo and check its factual determinations for clear error. United States v. St. Cyr, 977 F.2d 698, 701 (1st Cir. 1992). In carrying out this function, we glean the pertinent facts from the record of the change-of-plea and disposition hearings, supplemented by the presentence investigation report (PSI Report). See United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In the spring of 1998, the Drug Enforcement Administration (DEA) began to ponder the appellant's role in drug trafficking in and around Dorchester, Massachusetts. This aspect of the DEA's investigation culminated in the appellant's arrest on January 5, 1999. Two days later, a federal grand jury indicted the appellant and several confederates for a wide

variety of drug-trafficking offenses.  The charges against the appellant included possession of cocaine, cocaine base, and heroin with intent to distribute, as well as conspiracy.  See 21 U.S.C. §§ 841(a)(1), 846.

The appellant originally maintained his innocence, but changed his plea on January 27, 2000.  The probation department prepared the PSI Report.  It determined that the combination of drugs attributable to the appellant resulted in a base offense level of 34, and then applied a three-level credit for acceptance of responsibility.  See USSG §3E1.1.  It also noted the applicability of a ten-year minimum mandatory sentence, given the quantity of drugs involved.  See 21 U.S.C. § 841(b)(1)(A)(iii).  The appellant did not challenge any of these subsidiary determinations.

Even so, the PSI Report was not entirely uncontroversial.  It concluded that the appellant, who previously had been convicted in a Massachusetts state court on a narcotics charge, was still under a criminal justice sentence related to that charge when he committed the instant offenses. This finding dictated the assessment of two additional criminal history points, see USSG §4A1.1(d), which not only sufficed to move the appellant into a higher criminal history category (CHC) but also rendered him ineligible for the so-called "safety

-4-

valve" provision, USSG §5C1.2 (and, thus, for relief from the mandatory minimum sentence).[1]

The district court convened the disposition hearing on August 25, 2000. The appellant argued that he should be in a lesser CHC (and, accordingly, eligible for the safety valve). In mounting this argument, he asseverated that the supposed basis for the additional criminal history points — the existence of an outstanding probation violation warrant stemming from his prior state-court conviction — was insupportable because the warrant had been issued erroneously. The district court rejected this reasoning; concluded that the warrant was, indeed, outstanding; ruled that the appellant therefore had committed the offenses of conviction while under a criminal justice sentence; and increased the appellant's criminal history score. The court then used the higher CHC to fix the guideline sentencing range (121-151 months) and imposed a sentence at the nadir of the range.

---

[1]We have explained before how the safety valve operates. E.g., United States v. Ortiz-Santiagó, 211 F.3d 146, 150-51 (1st Cir. 2000). We also have explained how the addition of criminal history points can affect the duration of a defendant's sentence. E.g., United States v. Correa, 114 F.3d 314, 316 (1st Cir. 1997); United States v. Diaz-Villafane, 874 F.2d 43, 47-48 (1st Cir. 1989). It would serve no useful purpose to rehearse those explanations here.

In this venue, the appellant concentrates his fire on the lower court's determination that he was under a criminal justice sentence when he committed the offenses of conviction — a determination that adversely affected his guideline sentencing range and, in the bargain, rendered him ineligible for relief from the ten-year mandatory minimum. To explain the etiology of the determination, we must retreat to April 11, 1995. On that date, the appellant appeared before the West Roxbury District Court on a heroin distribution charge. The court imposed a suspended sentence, but placed him on probation for two years (until April 11, 1997).

Despite this show of leniency, the appellant apparently failed to meet with his probation officer after April of 1996. This lapse interrupted the scheduled termination of his probation and, on June 4, 1997, the state court issued a default warrant for the appellant's apprehension. Because the appellant's probation had not been terminated and the default warrant was still outstanding on the date that he appeared for sentencing in the instant case, Judge Saris treated him as being under an unfulfilled criminal justice sentence and boosted his criminal history score accordingly. See USSG §4A1.1(d) (directing the district court to "[a]dd 2 points [to the defendant's criminal history score] if the defendant committed

the instant office while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status"); id. §4A1.2(m) (stating that an outstanding warrant qualifies as a criminal justice sentence for purposes of section 4A1.1(d) "even if [the underlying] sentence would have expired absent such warrant"); see also id. §4A1.1(d), comment. (n.4) (explaining the effect of an outstanding probation violation warrant in language identical to that used in section 4A1.2(m)).

Subsequent to sentencing, the appellant filed a notice of appeal. He also moved to rearrange the legal landscape, returning to the West Roxbury District Court and filing a motion to terminate probation. On January 10, 2001, a state judge granted the motion and ended the appellant's probation "nunc pro tunc to April 11, 1997." Emphasizing this order and asserting that the default warrant never should have issued, the appellant assigns error to the district court's determination that he was under a criminal justice sentence at the time he perpetrated the offenses of conviction.

It is beyond cavil that, in the typical case, a defendant who commits a crime while subject to an outstanding violation warrant is deemed to be under a criminal justice

sentence for purposes of USSG §4A1.1(d).[2]  See United States v. Anderson, 184 F.3d 479, 480-81 (5th Cir. 1999), cert. denied, 528 U.S. 1091 (2000).  That is true even if the underlying sentence, as originally pronounced, would by its terms have expired but for the violation.  See United States v. Camilo, 71 F.3d 984, 986 (1st Cir. 1995); see also USSG §4A1.1(d), comment. (n.4).  The pivotal question, then, is whether the nunc pro tunc order of the West Roxbury District Court somehow alters that result.  There are two basic reasons why it does not.

In the first place, the appellant, by resting his argument on a matter that arose only after sentence was imposed in the federal district court, seeks to invalidate the district court's judgment on the basis of a proffer that he did not make below (indeed, the nunc pro tunc order did not exist on the date of the disposition hearing).  We long have adhered to the general principle that new matter may not be introduced for the first time in the court of appeals, see, e.g., Smith & Wesson v. United States, 782 F.2d 1078, 1084 (1st Cir. 1986); United States v. Kobrosky, 711 F.2d 449, 457 (1st Cir. 1983), and we see no reason to deviate from that general principle here.

---

[2]Of course, the prior sentence must otherwise be countable toward the defendant's criminal history score.  United States v. Camilo, 71 F.3d 984, 987 (1st Cir. 1995).  That condition does not present a problem here.

Indeed, the principle applies with particular force in this instance. At the disposition hearing, defense counsel suggested that he might attempt to secure a ruling from the West Roxbury District Court as to the validity of the warrant, and Judge Saris specifically invited him to return "within a year" should anything significant occur.[3] Notwithstanding this express invitation, the appellant never brought the nunc pro tunc order to the attention of the district court; rather, he attempted to leap-frog that court and use the order as a weapon of appellate advocacy. We will not honor that tactic: the checks and balances inherent in our multi-tiered judicial system would be set askew were we to do so.

In all events, under the federal sentencing guidelines post-sentencing maneuvers ordinarily cannot be used as history-altering devices. Consequently, even were we to consider the nunc pro tunc order, the appellant would not be advantaged. A defendant's CHC is to be calculated at the time of sentencing, see United States v. Cox, 934 F.2d 1114, 1124 (10th Cir. 1991), and nothing in the sentencing guidelines suggests that it should be modified, after sentence has been pronounced, because of a subsequent action taken by a state court.

---

[3]The district court no doubt had in mind the filing of a petition for post-conviction relief under 28 U.S.C. § 2255.

We are left, then, with this scenario.  When the appellant appeared for sentencing in the instant case, his state-court probationary term had not been concluded and a default warrant was outstanding.  On the face of things, the appellant was under a prior unfulfilled criminal justice sentence — a circumstance that constituted a proper predicate for the assessment of two additional criminal history points. See USSG §§4A1.1(d), 4A1.2(m).  That ends the matter, for the question of whether an individual is under a criminal justice sentence for purposes of the sentencing guidelines is a question of federal law, see Camilo, 71 F.3d at 987; United States v. Renfrew, 957 F.2d 525, 526 (8th Cir. 1992) — and federal law dictates that the district court take the state-court record as it finds it.[4]

The appellant has a fallback position.  He argues that, leaving the nunc pro tunc order to one side, the state court erred in issuing the default warrant, and that an erroneously issued warrant should not be held against him. In Camilo, 71 F.3d at 987, we left open the question of whether defects in a state warrant process might be considered by the sentencing

_____

[4]While there may be exceptions for state-court convictions obtained in violation of a defendant's Sixth Amendment right to counsel, cf. Custis v. United States, 511 U.S. 485, 490-93 (1994), the appellant makes no such claim.

-10-

court.  Other courts, however, have held unequivocally that (with possible exceptions not implicated here, see supra note 4) the sentencing guidelines do not compel district courts to inquire beyond the face of the state-court record, let alone to make after-the-fact evaluations of the correctness vel non of the decisions of state-court officials.  See Anderson, 184 F.3d at 481 ("In determining whether an outstanding violation warrant triggers a two-point increase, the Guidelines do not require us to assess the state authorities' diligence in executing a violation warrant."); United States v. Elmore, 108 F.3d 23, 27 (3d Cir. 1997) ("The plain language of the Guidelines indicates that two points are to be added whenever an outstanding warrant is in existence, regardless of whether the warrant is stale pursuant to state law at the time of sentencing, and irrespective of whether state authorities have been lax in attempting to execute the warrant."); see also United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997) ("[J]udicial inquiry into a defendant's criminal past for sentencing purposes, properly conceived, requires only a snapshot of the surface, not an archeological dig.  Thus, when a federal court is obliged to tabulate a defendant's criminal history score for sentencing purposes, limiting the requisite inquiry to the formal record . . . strikes the right balance.").  Based on these authorities,

we hold that in determining whether to add criminal history points under USSG §4A1.1(d), a sentencing court ordinarily is not required to look beyond the face of the state-court record, but, rather, may give weight to an outstanding warrant without inquiring into the validity of that warrant.[5]

We need go no further. It is clear from the records presented to the district court that, at the time of sentencing, a warrant was outstanding in regard to the appellant's failure to satisfy the terms of his state-court probation. The district court was free to accept the state-court docket as it stood, and the district court's determination was not undermined by the state court's later issuance of a nunc pro tunc order vitiating the warrant. Under these circumstances, it hardly can be said that the district court erred either in adding points to the appellant's criminal history score under USSG §4A1.1(d) or in declaring him ineligible to reap the benefits of the safety valve provision.

**Affirmed.**

---

[5]The government, citing cases such as Commonwealth v. Odoardi, 489 N.E.2d 674, 678-79 (Mass. 1986), and Commonwealth v. Sawicki, 339 N.E.2d 740, 742-44 (Mass. 1975), urges us to find that the default warrant here was validly issued under Massachusetts law. We have no occasion to reach this question and, consequently, we express no opinion on it.