# United States Court of Appeals
## For the First Circuit

No. 03-1204

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN BRENNICK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Bjorn Lange, Assistant Federal Public Defender, Federal Defender Office, on brief for appellant.
Mark E. Howard, Assistant United States Attorney, and Thomas P. Colantuono, United States Attorney, on brief for the United States.

July 29, 2003

**Per Curiam**.  In 1996, John Brennick pled guilty to a charge of federal bank larceny and was sentenced to 87 months imprisonment followed by 36 months supervised release.  He served the prison term without mishap, but trouble started soon after his release on October 18, 2002.  On December 14, he left a message for his supervising officer, Kevin Lavigne, claiming to be confused about the logistics of his scheduled drug test.  Two days later, he missed his drug testing appointment.  Officer Lavigne reprimanded Brennick and told him to report for testing the next day.  Brennick did not show up.  On December 18, Brennick admitted to Lavigne that he had relapsed into cocaine use, and the following day he gave a urine sample that tested positive for cocaine metabolites.

In the following weeks, Brennick appears to have gone on an extensive crime spree.  Only the last episode of that spree is relevant here: on December 29, 2002, Brennick was arrested after a failed attempt to elude the police in a high-speed car chase.  Brennick did not surrender voluntarily but crashed the car he was driving--a car not his own and with a screwdriver in the ignition instead of keys.

On January 7, 2003, Officer Lavigne filed a petition charging Brennick with six violations of the terms of his supervised release--three violations stemming from the car chase, two from non-compliance with the instructions of his supervising officer, and one based on possession of cocaine.  Under federal

law, an offender who commits a crime while on supervised release can have the release revoked and be returned to prison. 18 U.S.C. § 3583(e)(3) (2000); U.S.S.G. § 7B1.1 (2002). The revocation is designed to punish an offender's breach of trust in violating the court-ordered terms of release, so the sanction is independent of-- and potentially in addition to--regular criminal prosecution for the crime. U.S.S.G ch. 7, pt. A, introductory cmt. b.

Any "federal, state, or local offense" is deemed a violation of the terms of release. U.S.S.G. § 7B1.1(a). The guidelines divide release violations into three categories by type and severity of offense. U.S.S.G. § 7B1.1(a). Two categories are relevant here:

> (2) Grade B Violations--conduct constituting any [non-grade A] federal, state, or local offense punishable by a term of imprisonment exceeding one year.
>
> (3) Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.1(a)(2)&(3). The guidelines set out a mini-sentencing table using the grade of the release violation and the offender's criminal history to determine the appropriate sentence. U.S.S.G. § 7B1.4. If the defendant is found to have committed "conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Applying this framework to Brennick's case, the district court found Brennick guilty of all six violations on February 4, 2003. The court further determined that one of the six offenses--possession of cocaine--was a grade B violation since it was punishable by more than one year of prison under New Hampshire law. U.S.S.G. § 7B1.1(a)(2). All of Brennick's other offenses were grade C violations. Brennick's substantial criminal record placed him in criminal history category VI, so the relevant sentencing range for his release violation was 21-27 months. U.S.S.G. § 7B1.4. The district judge sentenced him to the statutory maximum of 24 months. 18 U.S.C. § 3583(e)(3).

At issue in this appeal is whether Brennick's simple possession of cocaine was properly classified as a class B felony under U.S.S.G. § 7B1.1(a)(2). Had Brennick committed only class C offenses, the relevant sentencing range would have been 8-14 months, far less than the 24 months he received. U.S.S.G. § 7B1.4. Since Brennick challenges the district court's interpretation of the guidelines, not findings of fact, our review is de novo. United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001); United States v. St. Cyr, 977 F.2d 698, 701 (1st Cir. 1992).

Both parties agree that simple possession of a controlled substance is not a class B violation under federal law; because it carries a maximum penalty of one year in prison, it is a class C offense. 21 U.S.C. § 844(a) (2000). The guidelines, however,

classify as a grade B violation any conduct that constitutes a "federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(2). Under New Hampshire law, possession of a controlled substance is a felony punishable by up to seven years in prison. N.H.R.S.A. 318-B:26(c) (2003). Nevertheless, Brennick argues that the New Hampshire classification should not be used in this case for two quite different reasons.

His first argument is based on the guidelines' statement that "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b) (emphasis added). Brennick argues that this provision "does not address conduct which ... amounts to the same offense under both federal and state law"; he urges us to conclude that the guidelines are ambiguous as to how such conduct should be treated, and to apply the rule of lenity to resolve the ambiguity in his favor. See United States v. Bowen, 127 F.3d 9, 13-14 (1st Cir. 1997) (applying rule of lenity).

Strictly speaking, conduct that violates the laws of two different sovereigns constitutes "more than one offense" and represents two different "violations." See Heath v. Alabama, 474 U.S. 82, 88 (1985) ("When a defendant in a single act violates the

-5-

'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" (quoting United States v. Lanza, 260 U.S. 377, 382 (1922))). Perhaps the drafters of this guideline were thinking principally about cases where two or more offenses each involved different conduct, but the guideline's language fits the present case like a glove. Like the Ninth Circuit, we see no ambiguity. United States v. Jolibois, 294 F.3d 1110, 1113 (9th Cir. 2002).

Further, treating the New Hampshire classification as controlling on these facts serves what appears to be the underlying policy of the guideline. Ordinarily, in administering a regime for federal sentencing, one might expect that a federal classification should prevail over a state classification and, indeed, that reliance on state classifications would introduce arbitrary disparities depending upon how the law in the particular state treated the underlying conduct. But the guideline itself makes clear that here, as in certain other instances, e.g. § 2L1.2, federal and state classifications are both relevant and that Congress favored use of the one that produces the more serious penalty. Jolibois, 294 F.3d at 1113-14.

As it happens, in United States v. Restrepo-Aguilar, 74 F.3d 361 (1st Cir. 1996), we dealt with a parallel problem of guideline interpretation and reached a comparable result. There, a substantial upward adjustment turned on whether a state drug

possession offense was regarded as a misdemeanor or felony; state law treated it as a felony, but comparable conduct under federal law would be only a misdemeanor. Id. at 363-64. The guidelines explained that the relevant definition of felony applied equally to offenses "in violation of federal or state law." § 2L1.2, cmt. n.7 (1994).

In Restrepo, we said that the guidelines' "'explicit reliance on state classifications represents a Congressional choice to include within the category of 'felony' offenses ... those crimes deemed serious enough by states to warrant felony treatment within their jurisdictions.'" Restrepo-Aguilar, 74 F.3d at 365 (quoting Jenkins v. INS, 32 F.3d 11, 14 (2d Cir. 1994)). In a similar manner, the guideline at issue in this appeal directs use of the state or federal classification having the most serious grade--which in this case means New Hampshire's classification. U.S.S.G. § 7B1.1. Any "lack of uniformity" that may result "is the consequence of a deliberate policy choice by Congress and the Commission that we cannot disregard." Restrepo-Aguilar, 74 F.3d at 366.

Brennick's second attack on the district court's judgment fares no better. Brennick asserts that the evidence presented at his revocation hearing--including his confession and positive drug test--would have been legally insufficient for conviction if he had been tried in New Hampshire state courts. Therefore, he argues,

reliance on the state law offense to determine the grade of supervised release violation is improper.

Both parties seem to proceed on the premise that it matters whether Brennick could be convicted under New Hampshire's own treatment of the evidence in this case. Yet the guidelines do not require the district judge to determine whether the defendant could be convicted under the particular evidentiary standards that prevail in state courts; rather, they direct the federal judge to determine if the defendant has engaged in conduct that constitutes an offense under state law. U.S.S.G. § 7B1.1. This determination is made using the flexible process of proof prescribed for federal revocation hearings. See Fed. R. Crim. P. 32.1(a)(2) (advisory committee notes); Fed. R. Evid. 1101(d)(3). Arguably, a state's evidentiary standards are irrelevant in making this federal determination.

In any event, there is no doubt that the evidence against Brennick would suffice for conviction in New Hampshire courts. In federal courts, a positive drug test is sufficient to show that a defendant possessed the drugs. United States v. Dow, 990 F.2d 22, 24 (1st Cir. 1993) (collecting cases); see also United States v. Trotter, 270 F.3d 1150, 1153-54, 1154 (7th Cir. 2001) (collecting cases). There is no reason to doubt that a New Hampshire court would be equally willing to accept such powerful scientific evidence. The cases Brennick cites as requiring additional

evidence of possession did not involve drug tests; all were disputes over constructive possession where the additional evidence was required to link a particular defendant to drugs found on the premises.  See, e.g., State v. Cartier, 575 A.2d 347, 349 (N.H. 1990); State v. Francoeur, 445 A.2d 1095, 1096 (N.H. 1982).

Further, in this case the evidence was not limited to the drug test: Brennick confessed to using drugs.  Brennick argues that an uncorroborated confession is not sufficient under New Hampshire law to support a conviction.  On this point he does have solid precedent.  State v. Zysk, 465 A.2d 480, 483 (N.H. 1983); State v. George, 257 A.2d 19, 20-21 (N.H. 1969).  But in this case the evidence included both a confession and corroborating evidence--the positive drug test.  Since a corroborated confession is sufficient to uphold a conviction, there is virtually no doubt that Brennick would have been convicted in state court.

Affirmed.