Felix MATEO Petitioner,

v.

UNITED STATES of America,
Respondent.

No. CIV.A. 02–10043–PBS.

United States District Court,
D. Massachusetts.

Aug. 12, 2003.

James P. Bardsley, Law Office of Bardsley & Gray, New Bedford, MA, for Petitioner.

Michael J. Pelgro, United States Attorney's Office, Boston, MA, for Respondent.

### *MEMORANDUM AND ORDER*

SARIS, District Judge.

### INTRODUCTION

Petitioner Felix Mateo brings a challenge under 28 U.S.C. § 2255 (2003) to his sentence for drug trafficking. In calculating Mateo's sentence, the Court increased his criminal history category because Mateo had been on state-court probation— and subject to a probation violation warrant—at the time of the federal offenses. Mateo argues that his sentence must now be revised, because after sentencing Mateo obtained a state court order terminating his state probation *nunc pro tunc* to a time prior to the federal offenses. Deciding an issue of first impression, the Court holds that the state-court *nunc pro tunc* order requires that Mateo be resentenced, and *ALLOWS* Mateo's § 2255 petition.

### BACKGROUND

The First Circuit has canvassed the background of this case in two earlier opinions: *United States v. Mateo,* 271 F.3d 11, 13–14 (1st Cir.2001) (*"Mateo I"*) and *Mateo v. United States,* 310 F.3d 39, 40 (1st Cir.2002) (*"Mateo II"*). Presuming familiarity with those opinions, the Court will highlight the key facts:

On January 27, 2000, Mateo pled guilty in this Court, pursuant to a written plea agreement, to various federal drug-related offenses, including conspiracy to distribute crack cocaine (in violation of 21 U.S.C. § 846) and distribution of crack cocaine (in violation of 21 U.S.C. § 841(a)).

On August 25, 2000, the Court sentenced Mateo to 121 months in prison. The sentence was at the low end of what the Court determined as the applicable Sentencing Guideline range. In calculating the criminal history component of the Sentencing Guidelines, the Court added two criminal history points based on the Court's finding that Mateo had committed the federal drug offenses while under sentence for another crime: a Massachusetts conviction on a narcotics charge.

Mateo had been sentenced for the state narcotics conviction on April 11, 1995. The state judge had imposed a suspended sentence and placed Mateo on probation for two years (until April 11, 1997). But Mateo's probation was not terminated on April 11, 1997, as scheduled, presumably because of probation violations (including Mateo's apparent failure to meet with his probation officer). On September 9, 1997, the state court issued a default warrant for Mateo's arrest. Mateo's probation had not been terminated, and the default warrant was still outstanding, when Mateo committed the federal drug offenses.

For these reasons, the Court found that Mateo was still "under sentence for another crime" when the federal offenses took place. One effect of this finding was to disqualify Mateo from receiving the "safety valve" under U.S. Sentencing Guidelines Manual § 5C1.2, which limits the applicability of statutory minimum sentences in certain cases. Mateo argues that but for the Court's determination as to his criminal history category, Mateo would have been entitled to the benefit of the safety valve; the government disputes this.

Mateo filed a notice of appeal of his federal sentence, and while the appeal was pending, Mateo succeeded in obtaining a state court termination of his state probation *nunc pro tunc* to April 11, 1997, a date

prior to the federal drug offenses. Before the First Circuit, Mateo argued that the *nunc pro tunc* order meant that he was not "under a criminal sentence" when he committed the drug offenses, and that therefore he must be resentenced.

The First Circuit rejected Mateo's argument, for two reasons. First, the Circuit Court noted that Mateo had failed to bring the *nunc pro tunc* order to this Court's attention, and emphasized that "[w]e have long adhered to the general principle that new matter may not be introduced for the first time in the court of appeals." *Mateo I*, 271 F.3d at 15. Second, the Circuit Court stated that

> even were we to consider the nunc pro tunc order, the appellant would not be advantaged. A defendant's [criminal-history category] is to be calculated at the time of sentencing, *see United States v. Cox*, 934 F.2d 1114, 1124 (10th Cir. 1991), and nothing in the sentencing guidelines suggests that it should be modified, after sentence has been pronounced, because of a subsequent action taken by a state court.

*Id.*

After losing on direct appeal, Mateo filed the instant § 2255 petition, again arguing that the state court *nunc pro tunc* order required resentencing. On March 13, 2002, the Court dismissed the petition, on the ground that the First Circuit had already rejected this argument. Mateo sought a certificate of appealability ("COA"), which the Court denied on April 23, 2002.

Mateo then sought a COA from the First Circuit—which the Circuit Court granted. The Circuit Court "accept[ed] responsibility ourselves for any confusion caused by *Mateo I*," *Mateo II*, 310 F.3d at 42, and clarified *Mateo I*'s holding, including its apparent prohibition of revising federal sentences based on post-sentencing events in state court:

> [T]he main holding in *Mateo I* does not apply [to Mateo's § 2255 petition] because the state court [*nunc pro tunc*] order now is part of the record. As for the further comment ... that Mateo would not be advantaged even had we considered the *nunc pro tunc* order—we think this meant only that the district court had not erred as the record before it stood; the court in *Mateo I* should not be taken to have decided in a brief comment a very difficult set of substantive issues concerning the consequence of a post-sentencing vacation of a state sentence that affected the federal sentence.

*Mateo II*, 310 F.3d at 40. The Circuit Court vacated the dismissal of Mateo's § 2255 petition, and remanded the case to this Court to resolve in the first instance the "formidably interesting issues" raised by Mateo's petition. *Id.* at 42.

## LEGAL ANALYSIS

As the First Circuit observed in *Mateo I*, "the question of whether an individual is under a criminal justice sentence for purposes of the sentencing guidelines is a question of federal law." 271 F.3d at 15. The starting point for analysis is the text of the Sentencing Guidelines.

## I. The Text of the Sentencing Guidelines

In calculating a defendant's criminal history category, a judge must "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S. Sentencing Guidelines Manual § 4A1.1(d). Moreover, "a defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a pro-

bation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence if that sentence is otherwise countable, even if that sentence would have expired absent such a warrant." *Id.* § 4A1.2(m). These Guidelines plainly mandated that Mateo be given two additional criminal history category points at his original federal sentencing.

But the Guidelines do not address whether Mateo's criminal-history category must be revised now that the state court has issued an order terminating his probation *nunc pro tunc* and thereby invalidating his probation-violation warrant. Nor, to the Court's knowledge, does caselaw exist on this issue. An extensive body of decisions, however, addresses another, analogous question left open by the Guidelines: whether a defendant's federal sentence should be reopened when state convictions that had been used to enhance the federal sentence (*e.g.*, by elevating the defendant's criminal history category) are vacated after the federal sentencing. The Court turns to this caselaw.

## II. From *Custis* to *Pettiford*

In *Custis v. United States*, the Supreme Court "determine[d] whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence" under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e). *Custis*, 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). The Supreme Court held that, under the ACCA, defendants could not use federal-sentencing proceedings to mount collateral attacks on state convictions, "with the sole exception of [state] convictions obtained in violation of the right to counsel." *Id.* The Supreme Court, however, held that if the state convictions were overturned in state

court, the defendant could seek to reopen the ACCA sentence:

> We recognize, however ... that [defendant] Custis, who was still "in custody" for purpose of his state convictions at the time of his federal sentencing under § 924(e), may attack his state sentences in Maryland or through federal habeas review. *See Maleng v. Cook*, 490 U.S. 488, 492, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989). If Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences. We express no opinion on the appropriate disposition of such an application.

*Custis*, 511 U.S. at 497, 114 S.Ct. 1732.

In *Daniels v. United States*, the Supreme Court amplified *Custis*, by "consider[ing] whether, after the [federal] sentencing proceeding has concluded, the individual who was sentenced may challenge his federal sentence through a motion under 28 U.S.C. § 2255 (1994 ed., Supp. V) on the ground that his prior [state] convictions [used to enhance his federal sentence] were unconstitutionally obtained." *Daniels*, 532 U.S. 374, 376, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001). The Supreme Court held "that, as a general rule, he may not." *Id.* Together, *Custis* and *Daniels* largely eliminated federal court as a forum for launching an initial, collateral attack on state convictions used as predicates for ACCA sentencing. *See Brackett v. United States*, 270 F.3d 60, 66 (1st Cir.2001) (stating that the *Custis* and *Daniels* holdings "mean[ ] that, absent a *Gideon* challenge, the 'where' question is answered: the initial attack on the validity of the state conviction should be brought in state court"). But *Daniels*, like *Custis*, recognized the possibility that an ACCA sentence could be reopened if predicate state

convictions were overturned in *state* court:

> After an enhanced federal sentence has been imposed pursuant to the ACCA, the person sentenced may pursue any channels of direct or collateral review still available to challenge his prior conviction. In *Custis,* we noted the possibility that the petitioner there, who was still in custody on his prior convictions, could "attack his state sentences [in state court] or through federal habeas review." [511 U.S. at 497, 114 S.Ct. 1732.] If any such challenge to the underlying conviction is successful, the defendant may then apply for reopening of his federal sentence. As in *Custis,* we express no opinion on the appropriate disposition of such an application.

*Daniels,* 532 U.S. at 382, 121 S.Ct. 1578 (bracketed text "in state court" in original). By "express[ing] no opinion on the appropriate disposition of such an application," *Daniels* and *Custis* failed to give clear guidance on this method of reopening ACCA sentences. *See Daniels,* 532 U.S. at 382, 121 S.Ct. 1578; *Custis,* 511 U.S. at 497, 114 S.Ct. 1732.

The First Circuit firmly addressed this issue in *United States v. Pettiford,* 101 F.3d 199, 200–02 (1st Cir.1996). In *Pettiford,* a defendant "was convicted of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1)" and "[b]ecause he had nine prior state convictions for violent felonies, he received a minimum mandatory sentence of fifteen years pursuant to the [ACCA]." *Pettiford,* 101 F.3d at 200. The First Circuit described the subsequent events:

> Approximately two years after his federal sentencing, defendant requested audiotapes of his earlier guilty pleas and sentencings in Boston Municipal Court and Dorchester District Court. He was unsuccessful in obtaining useful tapes ... and subsequently attempted to reconstruct the proceedings through the use of affidavits. Ultimately, the courts vacated eight of the nine convictions. The Boston Municipal Court judge, finding no record that the trial judge had engaged in any colloquy with the defendant at the time of his guilty plea, vacated the convictions on the ground that the Commonwealth had failed to carry its burden of producing a "contemporaneous record affirmatively [showing] that the defendant waived his rights voluntarily and knowingly," as required by the federal Constitution and Massachusetts law. The Dorchester District Court apparently did the same. On the [§ 2255] habeas petition, our district court, taking what would, initially, seem to us the equitable view, granted the relief and resentenced defendant to the term served, four and one half years.

*Pettiford,* 101 F.3d at 200. The First Circuit affirmed, rejecting the government's arguments that the state vacations gave defendant a "windfall" sentence reduction and that the government had been "sandbagged." *See id.* at 200, 202. The Circuit Court endorsed the "district court['s] conclu[sion] from the *Custis* dicta that § 2255 was the appropriate vehicle by which to proceed" with reopening the ACCA sentence. *Id.* at 201.

*Pettiford* is consistent with authority from other Circuit Court of Appeals. *See, e.g., United States v. Doe,* 239 F.3d 473, 475 (2nd Cir.2001) ("We agree with our sister Circuits and hold that defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions."); *United States v. Walker,* 198 F.3d 811, 813–14 (11th Cir.1999) ("Since *Custis* was decided in 1994, seven other circuits, all that have considered the

issue, have also held, or indicated without expressly deciding, that pursuant to federal habeas corpus, a district court may reopen and reduce a federal sentence, once a federal defendant has, in state court, successfully attacked a prior state conviction, previously used in enhancing the federal sentence.... We agree and follow suit."); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir.1999) ("We read *Custis* as requiring [defendant] to challenge the underlying state convictions first in the state court or in an independent *habeas corpus* proceeding brought pursuant to 28 U.S.C. § 2254. Only after [defendant] succeeds in such a challenge can he seek to reopen his sentence in this case."); *United States v. LaValle*, 175 F.3d 1106, 1108 (9th Cir.1999) ("[A] defendant who successfully attacks a state conviction may seek review of any federal sentence that was enhanced because of the prior state conviction."); *United States v. Bacon*, 94 F.3d 158, 162 n. 3 (4th Cir.1996) ("[I]f [defendant] succeeds in a future collateral proceeding in overturning his [state] robbery conviction, federal law enables him then to seek review of any federal sentence that was enhanced due to his state conviction."); *United States v. Cox*, 83 F.3d 336, 339 (10th Cir. 1996) ("If a defendant successfully attacks state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences."); *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994) (where federal sentence had been enhanced by state conviction, government conceded "that, in light of *Custis*, [defendant] should get the benefit of the fact that he subsequently had the previous state conviction overturned").

The government argues that *Pettiford's* adoption of the *Custis* dicta should be cabined to the context of the ACCA. But the First Circuit has extended *Custis's* main holding to the Sentencing Guidelines, *see* *Brackett*, 270 F.3d at 65 ("Naturally, the *Custis* ruling applies whether the sentence enhancement was imposed because of ACCA or because of the Sentencing Guidelines."), and other courts have applied the *Custis* dicta to the Sentencing Guidelines, *see, e.g., Doe*, 239 F.3d at 475 (Second Circuit adopting the Ninth Circuit's holding in *LaValle*, 175 F.3d at 1107–08, that the *Custis* dicta applied to the Sentencing Guidelines); *Candelaria v. United States*, 247 F.Supp.2d 125, 133 (D.R.I.2003) ("This Court concludes today that if re-sentencing is warranted when an enhancement under the ACCA is at issue, then re-sentencing is warranted when the enhancement resulted from applying the Sentencing Guidelines."); *United States v. Cavallero*, Crim. No. 95–59–P–H, 1999 WL 33117096 at *6 n. 4 (D.Me. Nov.17, 1999) (where government "argue[d] that *Pettiford* is distinguishable from the case at hand because it involved 'the statutory language of the Armed Career Criminal Act,' stating that the court do[es] not agree that the distinction is significant").

## III. The Government's Arguments

### A. Post–Offense/Post–Sentencing Events

The government contends that the Court's calculation of Mateo's criminal-history category remains correct, because Mateo was literally "under a criminal justice sentence" when he committed the federal crimes. This argument picks up on the First Circuit's observation in *Mateo II* that on remand, "the government could argue—though we express no view on the merits of such an argument—that one who commits a new offense while under sentence for an older one deserves a higher sentence *even* if the former conviction is later set aside." 310 F.3d at 42. Under this argument, the state court's *nunc pro tunc* order is simply irrelevant, because it

post-dates the federal offenses. As the government notes, treating post-offense events (and, *a fortiorari*, post-sentencing events) as irrelevant serves the interest of finality of judgments. *Cf. Custis*, 511 U.S. at 497, 114 S.Ct. 1732 (" '[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice.") (quoting *United States v. Addonizio*, 442 U.S. 178, 185 n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)).

But in *Pettiford* the First Circuit rejected this line of argument: "The government contends ... that only past offenses vacated prior to the federal proceeding may be discounted by the court, in effect etching the defendant's criminal history record in stone as of that moment. We do not agree." 101 F.3d at 201. The First Circuit found that the language of the ACCA excluding expunged convictions from ACCA sentencing enhancement determinations "would read equally well if applied to convictions expunged, etc., subsequent to the federal sentencing." *Id.* The Circuit Court went on to state that "with the rule of lenity, the government is on the short end. And with the procedural rule announced in *Custis*, that it is only after sentence that a defendant may attack the convictions that contributed to [the sentence], what sense would it make to say that he may attack pre-sentence convictions, but not one whose flaw did not appear until after the federal sentence?" *Id.* (citation omitted). *See, e.g., Cox*, 83 F.3d at 339 ("Although defendant's sentence was correct at the time of sentencing, subsequent events suggest that a different sentence now may be appropriate. Because there may be a change in defendant's criminal history category after his sentencing and direct appeal, the district court should have reopened defendant's sentence.").

The government fairly points to cases upholding *convictions*—as opposed to sentences—where predicate offenses were subsequently vacated. *See, e.g., United States v. Snyder*, 235 F.3d 42, 51–53 (1st Cir.2000) (upholding felon-in-possession-of-a-firearm conviction even though predicate state felony was later vacated). However, pointing to the need for a bright line with respect to guilt for crimes like felon-in-possession-of-a-firearm, the First Circuit itself has distinguished the conviction context from *Pettiford*, stating, "*Pettiford* was a sentencing case and its holding must be read in that context.... The two situations [*i.e.*, conviction and sentencing] call for differential treatment." *Snyder*, 235 F.3d at 52. Because this is a sentencing case, the Court will follow *Pettiford*.

■ While policy considerations support both the government's and defendant's positions, under the rule of lenity, the Court holds that a federal sentence enhanced based on a defendant's state record can be collaterally challenged when a state court modifies or invalidates the aspect of the state record that resulted in an enhanced federal sentence. *Cf. generally Albernaz v. United States*, 450 U.S. 333, 342, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("[The] policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.") (citation omitted); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955) ("It may be fairly said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.").

### B. Misapplication of Massachusetts Law?

The government maintains that even if post-sentencing/post-offense events are

relevant to the continuing validity of Mateo's federal sentences, Mateo's *nunc pro tunc* order should be ignored, because, in the government's view, the order conflicted with Massachusetts law. This argument raises a threshold question, namely, whether in the sentencing context the Court should scrutinize a state court judgment to determine whether it is correct as a matter of state law.

■ According to *Pettiford*, the answer is no: "Surely it is not for the federal court to read the [ACCA's] statutory language, 'in accordance with the law of the jurisdiction in which the proceedings were held' as permitting us to conclude that the Massachusetts lower court decisions were wrongly decided." 101 F.3d at 202. Indeed, in *Mateo I*, the First Circuit rejected Mateo's argument that the federal district court should have reviewed the state's court's issuance of a probation violation warrant against him:

> [Mateo] argues that . . the state court erred in issuing the default warrant, and that an erroneously issued warrant should not be held against him. In [*United States v.*] *Camilo*, 71 F.3d [984,] 987 [1st Cir.1995], we left open the question of whether defects in a state warrant process might be considered by the sentencing court. Other courts, however, have held unequivocally that (with possible exceptions not implicated here [*i.e.*, where state-court actions are taken in violation of a defendant's Sixth Amendment right to counsel]) the sentencing guidelines do not compel district courts to inquire beyond the face of the state-court record, let alone make after-the-fact evaluations of the correctness *vel non* of the decisions of state court officials. *See* [*United States v.*] *Anderson*, 184 F.3d [479,] 481 [(5th Cir. 1999)] ("In determining whether an outstanding violation warrant triggers a

two-point increase, the Guidelines do not require us to assess state authorities' diligence in executing a violation warrant."); *United States v. Elmore*, 108 F.3d 23, 27 (3rd Cir.1997) ("The plain language of the Guidelines indicates that two points are to be added whenever an outstanding warrant is in existence, regardless of whether the warrant is stale pursuant to state law at the time of sentencing, and irrespective of whether state authorities have been lax in attempting to execute the warrant."); *see also United States v. Correa*, 114 F.3d 314, 317 (1st Cir.1997) ("[J]udicial inquiry into a defendant's criminal past for sentencing purposes, properly conceived, requires only a snapshot of the surface, not an archaeological dig. Thus, when a federal court is obliged to tabulate a defendant's criminal history score for sentencing purposes, limiting the requisite inquiry to the formal record . . . strikes the right balance."). Based on these authorities, *we hold that in determining whether to add criminal history points under USSG § 4A1.1(d), a sentencing court ordinarily is not required to look beyond the face of the state-court record, but rather, may give weight to an outstanding warrant without inquiring into the validity of that warrant.*

*Mateo I*, 271 F.3d at 15–16 (emphasis added). *Cf. generally Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("[W]e have been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings."). This aspect of *Mateo I's* ruling, which was not revisited by *Mateo II*, controls here—even though the state court record now *favors* Mateo. It would be anomalous and unfair to scrutinize state-court judgments that benefit defendants,

while leaving unexamined state-court judgments that disfavor defendants.

The Court recognizes that in the context of a citizenship dispute under federal immigration law, the First Circuit stated: "The Supreme Court has held that where federal law incorporates a state characterization, a state trial court's construction of state law is not binding on a federal court." *See Fierro v. Reno,* 217 F.3d 1, 5 (1st Cir.2000) (upholding non-citizen's immigration classification where, after a deportation order had been issued, individual had obtained a *nunc pro tunc* order that purported to award retroactively custody of the individual to his father, a citizen). But even in that case, where a state-court *nunc pro tunc* order seemed incorrect as a matter of state law and a transparent end-run by the state court for equitable reasons, the First Circuit was "more comfortable leaving the state law issue undecided and resting instead on a strictly federal ground." *Id.* at 6.

■ The government trenchantly observes that *nunc pro tunc* orders modifying—to a defendant's benefit—state criminal records are sometimes granted by Massachusetts state courts without significant vetting of the relevant issues, and that this phenomenon has been heightened by defense counsel seeking modification of state criminal records to reduce federal penalties. *Cf. Brackett,* 270 F.3d at 64 ("Because the length of federal sentences increases with prior state convictions, the sentencing guidelines have led to a cottage industry of diligent defense counsel seeking to vacate old state convictions in order to reduce the federal sentence."). Nevertheless, absent exceptional circumstances (like a state-court legerdemain with no colorable legal or factual rationale) not present here, this Court will not second-guess a state court's judgment on state criminal law.

## C. § 2255

■ The government argues that even if there were an error, it is not now cognizable under § 2255. Section 2255 provides:

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"[T]his language has been construed somewhat less generously than the words alone might suggest." *Mateo II,* 310 F.3d at 41. *See Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (holding that the trial court's failure to offer defendant a right of allocution before sentencing was "not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demand of fair procedure," and did "not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'") (quoting *Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939)). The government contends that caselaw requires dismissal of Mateo's § 2255 petition, which, in the government's view, is an attempt to correct a misapplication of the Sentencing Guidelines by this Court. *See, e.g., Knight v. United States,* 37 F.3d 769, 773–74 (1st Cir.1994) ("While we do not hold that an error in the application of the sentencing guidelines could never constitute a 'com-

plete miscarriage of justice,' Knight's claims here do not meet that standard."); *Scott v. United States,* 997 F.2d 340, 342 (7th Cir.1993) ("One full and fair opportunity to make arguments under the Guidelines—at sentencing and on direct appeal—is enough.").

The government incorrectly frames the debate. The Court did not misapply the Sentencing Guidelines; based on the legal record before it at that time, the Court correctly calculated Mateo's sentence. The real issue is whether, where *post-sentencing* legal events have rendered a sentence invalid, a defendant may use § 2255 to reopen the sentence.

When the debate is properly framed, the caselaw cited by the government is revealed to be inapposite, as those cases dealt with Sentencing Guidelines errors that could have been corrected on direct appeal. Indeed, the availability of relief on direct appeal seems a primary reason for those courts' rejection of habeas relief. *See Knight,* 37 F.3d at 773 ("Each [of petitioner's claims of trial-court error] alleges ordinary errors that could and should have been raised by Knight on direct appeal."); *Scott,* 997 F.2d at 343 ("[A]rguments of the sort Scott proffers must be advanced on direct appeal or not at all."). Here, in contrast, the First Circuit held Mateo's sentencing challenge based on the *nunc pro tunc* order could not be raised on direct appeal, as the *nunc pro tunc* order was issued after this Court's sentencing. *See Mateo I,* 271 F.3d at 15 ("We long have adhered to the general principle that new matter may not be introduced for the first time in the court of appeals, and we see no reason to deviate from that general principle here.") (citations omitted). Thus, Mateo's only vehicle

for raising the *nunc pro tunc* order was § 2255.

Mateo's use of § 2255 is strongly supported by *Pettiford,* in which the First Circuit expressly approved of § 2255 as a mechanism for reopening a federal sentence once predicate state offenses have been vacated. *See* 101 F.3d at 201 ("Whether on constitutional or grounds otherwise subject to collateral attack, we concur with the district court's recognition of federal habeas jurisdiction."). *See also Brackett,* 270 F.3d at 64 n. 1 (not reaching government's argument that sentencing challenge was not cognizable under § 2255, but noting the *Pettiford* holding); *Walker,* 198 F.3d at 813–14 (Eleventh Circuit agreeing with "seven other circuits" that "held, or indicated without expressly deciding, that *pursuant to federal habeas corpus,* a district court may reopen and reduce a federal sentence, once a federal defendant has, in state court, successfully attacked a prior state conviction, previously used in enhancing the federal sentence") (emphasis added).

■ The Court concludes that Mateo's sentencing challenge is cognizable under § 2255.

### ORDER

The Court **ALLOWS** Mateo's § 2255 petition. However, the government challenges the availability of the safety valve, contending that the safety valve is not supported by the facts and that Mateo waived the safety valve in his plea agreement. The Court orders the Clerk to appoint counsel from the Criminal Justice Act panel for resentencing in the criminal case, Criminal Action No. 98–10320–PBS.[1]

---

1. It appears that the Federal Defender's Office may have a conflict. Also, while the Court thanks habeas counsel for his valiant efforts on appeal, he informed the Court he did not have the expertise to handle resentencing.

A hearing is scheduled for 3:00 pm on September 30, 2003.